UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM O'NEIL o/b/o
DEBRA O'NEIL (deceased),

      Plaintiff,

v.                                                                                          Case No.  8:07-CV-1074-T-17EAJ

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

      Defendant.
_____/

## FINAL ORDER

William O'Neil ("Plaintiff's representative") brings this action on behalf of his deceased

wife, Debra O'Neil ("Plaintiff"), pursuant to the Social Security Act (the "Act"), as amended, Title

42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his claim for a

period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before

the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the

pleadings and memoranda submitted by the parties in this case.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 22).

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standards. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision whether the proper legal standards were applied, the case must be remanded to the Commissioner for clarification. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed for a period of disability and DIB on August 8, 2002, claiming an onset of disability on October 31, 1994. (T 51-53) Her claim was denied initially and on reconsideration. (T 36-41) Plaintiff subsequently filed for SSI, receiving an administrative hearing on July 21, 2005. (T18, 44-47) She later died on June 11, 2006, survived by her husband. (T 10-12)

On January 20, 2006, the ALJ issued a decision finding that Plaintiff had not been disabled (T 18-30). Plaintiff's representative then filed the instant action on her behalf (Dkt. 1). The Commissioner's decision is ripe for review under the Act because Plaintiff has exhausted all administrative remedies.

Plaintiff, fifty-two years old at the time of her administrative hearing, had a high school

education and an Associates Degree in business administration. (T 19-20) She previously worked

as a utility dispatcher, customer service representative and administrative assistant. (T 19)  At the

July 21, 2005 hearing, Plaintiff contended that she was unable to work due to residuals from two

strokes, right-sided neuropathy, osteoarthritis of the hands and knees, fibromyalgia, and difficulty

with concentration. (T 440-46) Because Plaintiff met the nondisability requirements set forth in

Section 216(i) of the Act and was insured for disability benefits through December 31, 2000, the

ALJ held that she had to establish disability on or prior to that date. (T 19)

Although the ALJ conceded that Plaintiff had not engaged in "substantial gainful activity"[3]

since her alleged onset date, she nevertheless held that Plaintiff was not disabled under the Act. (T

29) The ALJ found that Plaintiff's obesity, early systemic lupus erythematosus, a history of cerebral

vascular accident (stroke), osteoarthritis of the knees, rheumatoid arthritis, fibromyalgia, and chronic

fatigue were "severe impairments" under 20 CFR §§ 404.1520(c) and 416.920(c). (T 29)  Relying

on the testimony of a vocational expert ("VE") in response to hypothetical questions which

incorporated these limitations, the ALJ determined that Plaintiff could have performed her past

relevant work as well as a number of other jobs in the current economy. (T 28-29) Specifically, the

ALJ noted that Plaintiff was able to perform a "wide range of light work . . . that requires lifting

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities.  Work may be substantial even if it is done on a part-time basis or if a claimant does less, gets paid less, or has less responsibility than when she worked before. 20 C.F.R. § 404.1572(a). Gainful work activity is work activity that is done for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). Generally, the Commissioner does not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity. 20 C.F.R. § 404.1572(c).

weights of no more than 10 pounds on a frequent basis, and 20 pounds occasionally." (T 27) In

reaching the conclusion that Plaintiff had not been under a disability as defined by the Act at any

time through the date of the decision, the ALJ held that Plaintiff's statements about the extent of her

limitations were not wholly credible. (T 29)

The medical evidence has been summarized in the decision of the ALJ and will not be

repeated here except as necessary to address the issues presented.

## II.

Plaintiff contends that the ALJ improperly discredited Plaintiff's subjective testimony and

failed to consider the combined effects of Plaintiff's impairments, specifically obesity (Dkt. 19 at

2). The Court will consider these arguments in order.

**A.** Plaintiff contends that the ALJ "mischaracterized [Plaintiff's] testimony in various

statements in the record in determining that [the] complaints were inconsistent with the finding of

disability" (Dkt 19 at 7). Plaintiff identifies three alleged mischaracterizations:

> (1) The ALJ wrote, "particularly of note is [Plaintiff's] testimony that she performs all light household chores such as cooking for her family, laundry, dish-washing, grocery shopping and light cleaning" (T 27); Plaintiff actually stated, "I manage to make dinner, like I say, I have to sit down. I, I, and I clean the kitchen. I don't do floors. I've hardly ever vacuumed. I make somebody else do that. I read. Watch television. I play on the computer. I play games and stuff. I do research on the computer. But those are for short periods usually." (T 447; Dkt. 19 at 7);

> (2) The ALJ wrote, "[Plaintiff] contends that she experiences poor attention and lack of focus for completing tasks. However, by her own admission, following the date she alleges she became disabled, [Plaintiff] pursued and obtained a college associate's degree . . . [and] worked part-time as an office clerk intern, and then as a student ambassador . . . answering telephones, stuffing envelopes, attending college functions, and other general office work." (T 27); Plaintiff actually testified that she only took one (1) or two (2) classes a week due to her inability to concentrate, and worked as an intern only two (2) hours per day, three (3) days per week (T 438-40; Dkt. 19 at 7-8); and

(3) <u>The ALJ "pointed out </u>that . . . Plaintiff was a member of a health club and used the pool for therapy once per week" (T 27); <u>Plaintiff actually stated,</u> "I do belong to the health club.  But I only do the pool and I'm lucky if I get that once a week. Some days it's just too much . . . trouble to get up and do it." (T 448; Dkt. 19 at 9)

Plaintiff claims the ALJ's failure to accurately recite the testimony indicates that the ALJ's decision was not supported by substantial evidence (Dkt. 19 at 9). Although Plaintiff claims that these mischaracterizations are "examples" of "various statements" by the ALJ, Plaintiff fails to identify any other instances (<u>Id.</u> at 7).

The Court finds no merit in Plaintiff's argument. Plaintiff not only fails to cite any case law whatsoever in support of his position, but also fails to demonstrate any prejudice resulting from the alleged mischaracterizations. <u>Eckert v. Comm'r of Soc. Sec.</u>, 152 Fed.Appx. 784, 791 (11th Cir. 2005) (finding that mischaracterizations by an ALJ do not undermine the appropriateness of a decision so long as it is still supported by substantial evidence). In fact, the ALJ's "paraphrasing" is close to Plaintiff's actual testimony. Plaintiff testified that she performed household chores; the ALJ stated that Plaintiff performed household chores.[4] Plaintiff testified that she worked part time and obtained a college associate's degree; the ALJ noted the same. Finally, the ALJ considered Plaintiff's testimony that she belonged to a health club and tried to exercise in the pool once a week. The mere fact that the ALJ declined to quote Plaintiff directly does not render her opinion deficient.

Further, the ALJ relied on more than the alleged mischaracterizations outlined above in finding that Plaintiff's claims of disability were not wholly credible. <u>Davis v. Apfel</u>, 93 F.Supp.2d 1313, 1316 (M.D. Fla. 2000) (citing <u>Grant v. Richardson</u>, 445 F.2d 656, 656 (5th Cir.1971) ("the

---

[4] The ALJ also acknowledged that, while Plaintiff could not "clean the floors or vacuum," she still "engages in ordinary activities, such as reading, watching television, and spending time on the internet/computer." (T 21)

resolution of any conflict in the evidence . . . and the determination of questions of credibility of the witnesses are not for the court; such functions are solely within the province of the Secretary"). The ALJ observed that, "[d]espite [Plaintiff's] allegation for [sic] continuing memory problems and mental confusion, [she] went on to recall, in detail, medical procedures and rheumatology diagnostics that were performed nearly 10 years ago." (T 21) Indeed, a November 22, 1994, neurological evaluation by Joseph Williams, M.D. ("Dr. Williams"), concluded that Plaintiff had intact visual fields and memory function, no gross facial symmetry or abnormal facial sensation, normal strength, sensory and reflex levels, and "no significant decrease in fine motor coordination" of the hands or fingers. (T 21, 135-36)   Although Plaintiff claimed that her mental condition subsequently deteriorated, a September 1995 neurological examination by the same physician found her to be alert and oriented in that she demonstrated normal short-term memory recall and mathematical calculations. (T 22, 139-41)

Dr. Williams stated that, despite Plaintiff's subjective complaints, "neuropsychological tests actually may be the best test in regards to eliciting the true deficit that [Plaintiff] is currently experiencing and place it from a subjective aspect into more of an objective realm." (T 140-41)  The ALJ noted Dr. Williams's conclusion that his findings "were inconsistent with [Plaintiff's] subjective complaints of physical limitations, emotional ability, and memory impairment . . . " (T 22, 139-41)  Finally, the ALJ noted that a January 2003 consultative examination performed by O.P. Akinsoto, M.D. ("Dr. Akinsoto") found Plaintiff to be "alert and oriented, in no physical distress, and demonstrat[ing] good recent recall, registration, and insight." (T 22, 278-83)

Also, as noted by the Commissioner, Plaintiff described her physical limitations differently on various forms and to her physician than at the hearing (Dkt. 21 at 8). For instance, Plaintiff 's

Work History Report states that she worked for two semesters as a student ambassador, walking a half hour at a time, and writing or typing for an hour and a half. (T 59)  She also noted that her job as an intern required her to compile reports and flyers. (T 60) And beyond her responsibilities as a homemaker, Plaintiff also cared for her mother after her father passed away. (T 293) Thus, as the ALJ indicated, Plaintiff's claims of disability were inconsistent with her actual activities. (T 27)

In addition, the ALJ also had good cause for rejecting the opinion of David Sikes, M.D. ("Dr. Sikes"), that Plaintiff was "unable to perform [her prior] work activities." (T 23, 313)  Johns v. Bowen, 821 F.2d 551, 554 (11th Cir. 1987) ("[i]t is established that the ALJ must accord 'substantial' or 'considerable' weight to the opinion of a claimant's treating physician, absent 'good cause' to the contrary.").  In June 2003, Plaintiff began treatment with Dr. Sikes after complaining of multiple arthralgias, "neuropathy" of the right arm, chronic fatigue, and poor short-term memory. (T 23, 310-13) Although Dr. Sikes opined on June 10, 2003, that Plaintiff was unable to work, the ALJ noted that Plaintiff's symptoms were mild to moderate at worst – Plaintiff's extraocular muscles, deep tendon reflexes, symmetry of the biceps, triceps, patellar and Achilles, Plantar flexor response, motor strength, and other potential indicators of disability were all normal. (T 23, 313) In follow-up visits with Dr. Sikes in July 2003, September 2003, and October 2004, during which Plaintiff received diagnoses for "probable" systemic lupus erythematosus, fibromyalgia, obesity, and antiphospholid antibody syndrome with CVAs, the ALJ noted that her "neurological and muscoskeletal examination findings remained unchanged from the initial consultation, [again] with essentially mild to moderate symptoms." (T 23, 348-73, 386-87) Thus, the ALJ properly discredited Dr. Sikes's opinion that Plaintiff was unable to work.

Finally, Khin Law Maw, M.D. ("Dr. Maw"), Plaintiff's primary care physician beginning in 2002, never offered a medical opinion as to Plaintiff's ability to work. (T 24; 388-418) Dr. Maw provided prescriptive renewals for Plaintiff's medications and conducted multiple hematology and imaging studies, but (as the ALJ notes), Dr. Maw gave "no opinion as to the severity of [Plaintiff's] diagnosed impairments . . . or their resulting residual limitations." (T 24) This fact further justified the ALJ's decision to deny benefits.

**B.** Plaintiff further contends that the ALJ did not consider the effect of Plaintiff's obesity on her other impairments, as well as her resulting fatigue (Dkt. 19 at 2). The Court asmithdisagrees. The ALJ took Plaintiff's obesity and fatigue into account, noting that, "[o]n intake consultation [with Dr. Sikes], [Plaintiff] presented as an obese individual (5 feet, 8 inches tall; weight approximately 300 pounds) . . ." (T 23) Plaintiff was unable to stand or sit for prolonged periods of time and took two to three naps each day. (T 20-21) The ALJ went on to find that Plaintiff's obesity and the resulting chronic fatigue were indeed "severe" impairments, significantly limiting her ability to work.[5] (T 25, 29) But while Dr. Sikes opined that Plaintiff's obesity and fatigue rendered her disabled (T 386), the ALJ nevertheless determined that this assessment was "wholly inconsistent with [Dr. Sikes'] own clinical findings" and the objective medical evidence. (T 26, 386-87) As already discussed, the ALJ properly discredited Dr. Sikes's findings. Thus, the ALJ only denied benefits upon finding that the objective medical evidence did not show that Plaintiff's obesity and fatigue rendered her disabled. Reliford v. Barnhart, 157 Fed.Appx. 194, 196 (11th Cir. 2005) (the ALJ properly denied benefits where, despite Plaintiff's obesity and other impairments, her limitations did not render her totally disabled).

---

[5] See Section II(A) of this order, supra.

Additionally, the ALJ considered the combined effects of Plaintiff's impairments. In discussing Plaintiff's alleged depression and memory impairments, for instance, the ALJ noted that:

> . . . [i]t is next necessary to establish whether [Plaintiff] has a 'severe' impairment or combination of impairment . . . . Along with physical impairments, [Plaintiff] alleges that depression and memory impairments contribute to her inability to perform work activity. There is no evidence, however, that claimant has ever sought ongoing specialized psychological or psychiatric therapy for the alleged condition . . . [T]here is [also] no evidence that [Plaintiff's physician] found the condition severe enough to warrant referral for specialized care. (T 24)

The ALJ also discussed Plaintiff's other alleged impairments, stating that:

> . . . the medical evidence does support a finding that [Plaintiff] <u>does</u> have impairments which causes [sic] significant vocationally relevant limitations, specifically obesity, early systemic lupus erythematosus, a history of cerebral vascular accident (stroke), osteoarthritis of the knees, rheumatoid arthritis, fibromyalgia, and chronic fatigue – impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, on of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (T 25) (emphasis in original)

The Eleventh Circuit has repeatedly held that, for the purposes of considering the combined effect of a plaintiff's impairments, it is sufficient that an ALJ render a finding regarding Plaintiff's "impairment or combination of impairments." <u>See</u>, <u>e.g.</u>, <u>Reliford</u>, 157 Fed.Appx. at 196 ("an ALJ's finding regarding a claimant's 'impairment or combination of impairments' establish[es] that the ALJ . . . indeed considered the impact of the claimant's combined impairments."); <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1224-25 (11th Cir. 2002).  Thus, the Court finds Plaintiff's contention that the ALJ did not consider her obesity either singly or in combination with other impairments to be without merit.

**III.**

The ALJ's decision was supported by substantial evidence and proper legal principles. The decision of the Commissioner denying Plaintiff's application for a period of disability, DIB and SSI is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE** and **ORDERED** in Tampa, Florida on this 30th day of April, 2008.

ELIZABETH A JENKINS
United States Magistrate Judge